UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
YEN HWA HUANG,

                *Plaintiff*,

            v.

HONG KONG AND SHANGHAI BANKING
CORPORATION LTD., A FOREIGN
COMPANY; HSBC BANK USA, N.A.,
A NATIONAL BANKING ASSOCIATION;
and DOES 1 THROUGH 100, INCLUSIVE

                *Defendants*.
------------------------------------------------------------------X

**Docket No.:**

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff, Yen Hwa Huang, by and through her attorneys Ballon Stoll Bader & Nadler, P.C., complaining of Defendants, Hong Kong and Shanghai Banking Corporation LTD., HSBC Bank USA, N.A. and John Does 1 through 100 inclusive, (Collectively "Defendants"), alleges upon personal knowledge, unless where information and belief is stated.

## JURISDICTION AND VENUE

1.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

2.    Venue is proper in this jurisdiction under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims in this action occurred in this Judicial District, and the Defendants may be found within this Judicial District and conduct business within this Judicial District.

3.    This Court has personal jurisdiction over Defendants because certain of them have business operation in this state, while others have sufficient minimum contacts with the state, and otherwise intentionally avail themselves of the markets of this state so as to render this Court's exercise of jurisdiction permissible under traditional notions of fair play and substantial justice.

## PARTIES

4.    Plaintiff is an individual who resides in New York, New York.

5.    Defendant HONG KONG AND SHANGHAI BANKING CORPORATION LIMITED "HSBC Hong Kong"), is a Hong Kong Corporation with its principal place of business in Hong Kong, China. Throughout the relevant period, HSBC Hong Kong was the

primary, if not sole, banking institution used to maintain the funds that are the subject of this lawsuit.

6. Defendant HSBC BANK USA, N.A., ("HSBC USA") is a federally chartered bank, with its headquarters in Mclean, Virginia, and its principal place of business located in New York, New York. HSBC USA is the correspondent bank for HSBC Hong Kong.

7. Defendants DOES 1 through 100, inclusive, whether individual, corporate, associate, alter ego, or otherwise, are fictitious names of Defendants whose true names and capacities, at this time, are unknown to Plaintiffs; Plaintiffs are informed and believe and thereupon allege that at all times herein mentioned, each Defendant sued herein as a DOE was acting for itself or its agent, servant, employee, and/or alter ego of its Co-Defendants, and in doing the things hereinafter mentioned, was acting in the course and scope of its authority as such agent, servant, employee, and/or alter-ego, and with the permission and consent of its Co-Defendants; and that each of said fictitiously named Defendants, whether acting for itself or as agents, corporations, associations, or otherwise, is in some way liable or responsible to Plaintiffs on the facts hereinafter alleged, and caused injuries and damages proximately thereby, as hereinafter alleged, and at such times as Defendants' true names and capacities become known to Plaintiffs, Plaintiffs will ask leave of this court to amend this Complaint to insert said true names and capacities.

## FACTS

8. On or about August 9, 2019, Plaintiff received a telephone call. The caller told Plaintiff that he was calling from the Chinese Consulate of the People's Republic of China in New York.

9. The caller informed Plaintiff that the consulate had received an official government letter that they just arrested a Chinese fugitive that had five (5) passports on him at the Shanghai International Airport, one of them containing the name of Plaintiff and that Plaintiff was temporarily banned from entering China because there was an investigation underway.

10. The caller then connected Plaintiff to what the caller described as the local police station in Shanghai to report this.

11. Plaintiff spoke to what she believed was an office in the local police station in Shanghai, China. Plaintiff requested the officer's badge number and verified the phone number for this precinct on the Shanghai police website.

2

12. The officer took down the information from Plaintiff and filed what Plaintiff believed to be a police report and informed Plaintiff that it would take 3 days to investigate the claim.

13. Three days later, Plaintiff received a phone call from this officer stating that the investigation was complete and that she was the victim of identity theft.

14. The officer then proceeded to ask the supervisor for authorization to clear Plaintiff's record in connection with this passport.

15. Plaintiff could overhear the officer talking to his supervisor, Mr. Qiu-xue-Qiang. Mr. Qiu claimed that he was a specially appointed investigator to investigate claims of international money laundering. Mr. Qiu began yelling at the officer and told the officer that Plaintiff was part of an international money laundering crime organization and that he will be ordering an immediate arrest and extradition to China while they investigate her.

16. At this time Plaintiff became frightened and was unsure of what was going to happen to her. Another Senior Police officer called her back moments later notifying Plaintiff that she would be arrested immediately, but they can delay her arrest by giving her an option to have her bank account investigated. The officer told Plaintiff that they will request an investigation into her bank account to prove that her money was in fact not part of a money laundering operation and that she was innocent.

17. Plaintiff was told that the police would match her money against a series of bills that they had from this crime organization.

18. Plaintiff, formerly a Chinese citizen, believed that she was in immediate danger of being arrested by the Chinese government and therefore signed an agreement that the officer had sent to her allowing for an investigation into her bank accounts.

19. The agreement also required Plaintiff to report to the "officers" via text message, providing them with her whereabouts about five times a day. This senior office also called her 2 to 3 times a day to check in on Plaintiff. Furthermore, this agreement, specifically warned Plaintiff to maintain secrecy during the investigation, including but not limited to not telling her friends and family due to the sensitive nature of the investigation. Plaintiff was told that due to the number of criminals still at large if she were to tell anyone she would be in violation of Chinese Secrecy law which would could hold up to a 15 year prison sentence.

20. On or about August 14, 2019, Plaintiff was instructed to go to her Fidelity

Brokerage Firm and other bank accounts that she had and liquidate them.

21. She was then told to wire her money from these banks to the Hong Kong Independent Commission Against Corruption under the China Banking Regulatory Commission in order to examine the money that plaintiff had.

22. At this point, Plaintiff began sending large amounts of money through wire transfers to these individuals in Hong Kong.

23. Plaintiff would send each sum of money to an HSBC Hong Kong account that was then emptied each time the money was sent.

24. Soon after, the officer called Plaintiff back and actually showed Plaintiff video of criminals that they had arrested together with a view of the police station and his uniform.

25. On or about August 19, 2019, Plaintiff wired to Hang Seng Bank $70,000.00.

26. On or about August 27, 2019, Plaintiff wired to HSBC Hong Kong $400,000.00

27. On or about August 29, 2019, Plaintiff wired to HSBC Hong Kong $330,000.00

28. On or about September 10, 2019, Plaintiff wired to HSBC Hong Kong $450,000.00

29. Finally, on or about October 16, 2019, Plaintiff wired to HSBC Hong Kong $160,000.00.

30. Plaintiff was told to wire each transfer to a different recipient with different names and HSBC account numbers for each transaction. Additionally, for each individual transfer Plaintiff was told to put some sort of event in the memo such as "wedding present" or "purchase of apartment" so this way the "officers" would be able to separate each transfer.

31. All of the transfers cleared without any issues or flags from HSBC. However, the final October 16, 2019 transfer was flagged by HSBC Hong Kong as possible fraud.

32. The "special investigator" in China told Plaintiff that this was the last sum of money that they needed to clear through the bank and then her name would be cleared and the money returned to her.

33. HSBC however would not release the money and said that they were holding the money as an "administrative decision". The "special investigator" then called Plaintiff to inform her that the Anti-Corruption Bureau in Hong Kong had submitted an official letter to HSBC Hong Kong that Plaintiff was assisting them in their investigation.

34. After receipt of the letter, HSBC Hong Kong released the $160,000 back to

Plaintiff at which point the "special investigator" then demanded that Plaintiff re-wire the money through different banks and not HSBC. On November 1, 2019, the "special investigator" told Plaintiff that they had received the final sum.

35. Plaintiff then tried to reach out to the "officers" to determine the status of the investigation; however, she was unable to get in touch with any of them. It was at this point, on or about November 2, 2019, that Plaintiff first realized that she was the victim of a major money wiring scam.

36. Plaintiff realized that her entire life savings from her over forty (40) years of work as a nurse at a major hospital in New York was gone.

37. Over the next few days, Plaintiff went to her banks in New York to try and request recalls of all the money that was sent to HSBC Hong Kong. Approximately a week or two later, HSBC USA in New York replied to Plaintiff's recalls by sending reply notes to her Citi bank and Chase bank on behalf of HSBC Hong Kong that the money had already cleared and the accounts were empty.

38. Upon information and belief, HSBC Hong Kong realized these transfers were fraudulent and made under duress but did not have the proper procedures in place to properly flag and hold this money so as to not allow the money to be entered into the scammer's bank accounts.

39. Upon information and belief, HSBC Hong Kong and its affiliate HSBC USA could have prevented these wire transfers from going through which would have prevented these scammers to fraudulently take Plaintiff's money.

40. Upon information and belief, HSBC Hong Kong and its affiliate HSBC USA had sole control, supervision, and maintenance over these transfers and accounts.

41. Upon information and belief, each of the scammers accounts in which Plaintiff's money was placed was housed in HSBC Hong Kong and should have been closed or otherwise removed from the bank for accounts that were fraudulent and otherwise illegal and in violation of the law.

42. Upon information and belief, the Defendants are well aware of the threat of these types of scammers and did not take the proper precautions and security measures.

43. Upon information and belief, the U.S. Government reported that approximately $1.7 Billion has been stolen due to bank scammers in the last year and over $3.5 Billion over the

last two years.

## COUNT I- AIDING AND ABETTING FRAUD

44. Plaintiff realleges and incorporates herein the allegations set forth above as if fully set forth by reference.

45. The scammers mentioned above defrauded Plaintiff by making her believe that she was the subject of a criminal investigation when in fact they were defrauding Plaintiff.

46. Plaintiff would not have transferred any money to the scammers had she known the truth.

47. Defendant HSBC Hong Kong substantially assisted and aided and abetted these scammers by providing accounts into which Plaintiff's money could be wired transferred to.

48. Defendant HSBC USA substantially assisted and aided and abetted fraud by serving as an intermediary bank by which HSBC Hong Kong accepted the money transfers from Plaintiff's various New York banks.

49. As a proximate result of Defendants' conduct, Plaintiff suffered compensable damages in an amount exceeding $1.4 Million dollars.

## COUNT II- AIDING AND ABETTING CONVERSION

50. Plaintiff realleges and incorporates herein the allegations set forth above as if fully set forth by reference.

51. Defendants had or should have had actual knowledge that the accounts into which Plaintiff's money was going were fraudulent.

52. Defendant HSBC Hong Kong substantially assisted and aided and abetted the scammers by providing accounts into which Plaintiff's money could be wire transferred to.

53. Defendant HSBC USA substantially assisted and aided and abetted fraud by serving as an intermediary bank by which HSBC Hong Kong accepted the money transfers from Plaintiff's various New York banks.

54. As a proximate result of Defendants' conduct, Plaintiff suffered compensable damages in an amount exceeding $1.4 Million dollars.

## COUNT III- NEGLIGENCE

55. Plaintiff realleges and incorporates herein the allegations set forth above as if fully set forth by reference.

56. Defendants had or should have had actual knowledge that the accounts into which

Plaintiff's money was going were fraudulent.

57. Defendants failed to have the necessary security procedures in place in order to properly flag and prevent these fraudulent wire transfers from taking place.

58. Defendants controlled, maintained, managed, secured, and supervised these accounts to which Plaintiff's money was transferred to as well as control, maintenance, and supervision over the money as it was being transferred.

59. This failure of Defendants actually and proximately caused Plaintiff to lose her money at the hands of these scammers.

60. Defendants did flag the final wire transfer on October 16, 2019, however they failed to stop the other wire transfers that had gone through and eventually did allow this transfer to go through as well upon receipt of a fraudulent police document from the scammers.

61. As a proximate result of Defendants' conduct, Plaintiff suffered compensable damages in an amount exceeding $1.4 Million dollars.

**WHEREFORE**, Plaintiff prays for judgment against Defendants, jointly and severally, as follows:

1. On the first count, judgment against Defendants in the amount of $1.4 Million in compensatory damages and attorney's fees in an exact amount to be determined at trial;

2. On the Second Count judgment against Defendants in the amount of $1.4 Million;

3. On the Third Count judgment against Defendants in the amount of $1.4 Million: and

4. That Plaintiff have such other, further, and different relief as the Court deem just, proper, and equitable in the circumstances, together with interest on all Causes of Action, attorney's fees, and costs and disbursements in this action.

Dated: New York, New York
May 6, 2020

BALLON STOLL BADER & NADLER, P.C.

By: _s/Marshall Bellovin_
Marshall B. Bellovin, (MB5508)
*Attorneys for Plaintiff*
729 Seventh Avenue, 17th Floor
New York, New York, 10019
212-575-7900