UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

YEN HWA HUANG,

       Plaintiff,

   -v-                               No.   1:20-cv-03548-LTS-SN

HONG KONG AND SHANGHAI
BANKING CORPORATION LTD., A
FOREIGN COMPANY; HSBC BANK USA,
N.A., A NATIONAL BANKING
ASSOCIATION; AND DOES 1 THROUGH
100, INCLUSIVE,

       Defendants.

-----------------------------------------------------------x

MEMORANDUM OPINION AND ORDER

      Plaintiff Yen Hwa Huang ("Plaintiff"), who pleads that she was defrauded out of

her life savings by scammers pretending to be Chinese officials who instructed her to wire large

sums of money to bank accounts in Hong Kong, brings this action asserting state law claims for

aiding and abetting fraud, aiding and abetting conversion, negligence, and violation of Article 4A

of the Uniform Commercial Code ("UCC").  Plaintiff asserts claims against 100 unknown

individuals and entities that are allegedly "in some way liable" for her loss of the more than one

million dollars she wired to various bank accounts in response to the fraudulent contacts (Does 1

through 100); the bank that held the accounts to which she wired the funds; and the bank that

processed those wire transfers (Hong Kong and Shanghai Banking Corporation LTD ("HSBC

Hong Kong") and HSBC Bank USA N.A. ("HSBC USA," or the "Bank"), respectively).  This

Court has jurisdiction of this action pursuant to 28 U.S.C. section 1332.

Defendant HSBC USA moves pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b) to dismiss all four of Plaintiff's claims.  The Court has reviewed thoroughly the parties' submissions and, for the following reasons, HSBC USA's motion to dismiss is granted as to each of Plaintiff's four causes of action, although Plaintiff will be permitted to file a motion for leave to amend her fourth claim, for violation of UCC Article 4A, within 30 days.

BACKGROUND

The following facts are drawn from the allegations set forth in the Amended Complaint and are taken as true for the purposes of this motion to dismiss.  On or about August 9, 2019, Plaintiff received a telephone call from a person purporting to work for the Chinese Consulate in New York.  (Docket entry no. 15 (Am. Compl.) ¶ 8.)  The caller informed Plaintiff (who was formerly a Chinese citizen) that she was being investigated for fraud and money laundering, and Plaintiff was led to believe that she would be arrested and extradited to China if she failed to cooperate with the investigation.  (Id. ¶ ¶ 8-15.)

Plaintiff was told that, in order to clear her name, she would have to grant the "investigators" access to her bank account, regularly check in with them, and refrain from telling her family or friends about the investigation.  (Id. ¶ ¶ 15-19.)  The scammers instructed Plaintiff to liquidate her bank accounts and send them a series of wire transfers.  (Id. ¶ ¶ 20-22.)  In order to carry out these wire transfers, Plaintiff went on each occasion to institutions in which she held accounts in New York (which included Fidelity Brokerage, Citi Bank, and Chase Bank), liquidated her holdings, and then sent a sum of money via wire transfer to an account at HSBC Hong Kong.  (Id. ¶ ¶ 20-23, 37.)  Plaintiff made a total of four such transfers, each going to a different account at HSBC Hong Kong:

- $400,000 on August 27, 2019.

- $330,000 on August 29, 2019.

- $450,000 on September 10, 2019.

- $160,000 on October 16, 2019.

(Id. ¶ ¶ 26-29.)

For each transfer, HSBC USA served as the "intermediary bank" which accepted and processed "the money transfers from Plaintiff's various New York banks." (Id. ¶ 50.) Each wire transfer was sent to a separate HSBC Hong Kong bank account with a different named recipient. (Id. ¶ 30.) For each transfer, Plaintiff was instructed to put a note in the memo, such as "wedding present" or "purchase of apartment." (Id. ¶ 30.) After the money was deposited into an HSBC Hong Kong account, the Hong Kong account would immediately be emptied. (Id. ¶ 23.)

The first three wire transfers cleared without any issue—however, the October 16 transfer was "flagged by HSBC Hong Kong as possible fraud," and HSBC Hong Kong subsequently released the $160,000 sum back to Plaintiff after receiving a letter purporting to be a confirmation by the "Hong Kong Anti-Corruption Bureau" that Plaintiff was participating in an investigation. (Id. ¶ ¶ 31-34.) Nevertheless, Plaintiff then followed instructions from the scammers to re-wire the money through a different bank. (Id. ¶ ¶ 32-34.)

Soon after the fourth transfer, Plaintiff was unable to reach any of the "investigators," and she realized that she had been the victim of a scam. (Id. ¶ 35.) Plaintiff went to her banks in New York to try to request recalls of the funds that she had sent to the HSBC Hong Kong accounts. (Id. ¶ 37.) Approximately one week later, "HSBC USA in New York replied to Plaintiff's recalls by sending reply notes to her Citi bank and Chase bank on

behalf of HSBC Hong Kong [stating] that the money had already cleared and the accounts were empty."  (Id.)

On May 6, 2020, Plaintiff filed suit against HSBC Hong Kong, HSBC USA, and unnamed Doe Defendants, asserting three causes of action: aiding and abetting fraud; aiding and abetting conversion; and negligence.  (Docket entry no. 1 .)  On October 14, 2020, following a meet and confer among counsel concerning HSBC USA's anticipated motion to dismiss the complaint, Plaintiff amended her Complaint to add a claim for violation of UCC Article 4A. (Docket entry nos. 14 and 15.)  On November 13, 2020, HSBC USA filed a motion to dismiss the Amended Complaint.  (Docket entry no. 18 ("Mot. To Dismiss").)  Plaintiff filed papers in opposition to the motion to dismiss, and HSBC USA filed a reply.  (Docket entry nos. 25 ("Opp. Memo"), 26 ("Reply Memo").)

## DISCUSSION

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).  A complaint cannot simply recite legal conclusions or bare elements of a cause of action; it must plead factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  Under the Rule 12(b)(6) standard, the court accepts as true the non-conclusory factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor.  Roth v. Jennings, 489 F.3d 499, 501 (2d Cir. 2007).  For claims that sound in fraud, Rule 9(b) provides a heightened pleading standard, requiring that a party "state with particularly the circumstances

constituting fraud."  Fed. R. of Civ. P. 9(b); Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d

Cir. 2006).

HSBC USA ("the Bank") moves to dismiss each of Plaintiff's four causes of

action, arguing that: (1) all of Plaintiff's common law actions are displaced by the UCC; and (2)

Plaintiff's UCC claim has not been adequately pled.  For the reasons set out below, Plaintiff's

four causes of action against the Bank are dismissed, and Plaintiff is granted permission to move

for leave to amend her UCC claim.


UCC Displacement

The UCC is a set of uniform laws, adopted by all 50 states, that governs a wide

range of commercial transactions.  In New York, the UCC is codified under Chapter 38 of the

Consolidated Laws of New York.[1]  N.Y. UCC §1-101 (McKinney).  The parties agree that

Article 4A of the UCC, which "governs electronic funds transfers, commonly known as

wholesale wire transfers," is relevant here.  See Ma v. Merrill Lynch, Pierce, Fenner & Smith,

Inc., 597 F.3d 84, 87 (2d Cir. 2010); N.Y. UCC § 4A-102 (McKinney), Official Comment.  A

"funds transfer" under Article 4A encompasses a wire transfer that is processed by an

intermediary bank.  See N.Y. UCC § 4A-104(1) (McKinney) (defining "funds transfer" to

include "any payment order issued by . . . an intermediary bank intended to carry out the

originator's payment order").  Article 4A was intended to provide "clear rules for parties to

follow with respect to a wire transfer," and sets out a "detailed scheme for analyzing the rights,

---

[1]     New York state law applies to this tort action because a federal court sitting in diversity
applies the substantive law of the forum state, and in the present case New York is where
all the alleged torts occurred.  See Krock v. Lipsay, 97 F.3d 640, 645 (2d Cir. 1996); Erie
R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).

duties, and liabilities of banks and their customers in connection with the authorization and

verification of payment orders." In re Awal Bank, BSC, 455 B.R. 73, 92 (Bankr. S.D.N.Y.

2011) (citations omitted).

UCC Article 4A was intended to provide a "comprehensive body of law"

governing wire transfers. See Regatos v. N. Fork Bank, 257 F. Supp. 2d 632, 643 (S.D.N.Y.

2003). A common law claim will be displaced by Article 4A under two scenarios: (1) when the

common law claim would create "rights, duties, or liabilities inconsistent with" Article 4A; or (2)

when the circumstances giving rise to the common law claim are "specifically covered by the

provisions of Article 4A." Awal, 455 B.R. at 92 (citation omitted). If the common law claim is

inconsistent with Article 4A (or is expressly addressed by Article 4A), then the common law

claim is considered displaced and must be dismissed. See Sheerbonnet, Ltd. v. Am. Exp. Bank,

Ltd., 951 F. Supp. 403, 410-11 (S.D.N.Y. 1995). However, if the common law claim does not

conflict with Article 4A (and the basis of the claim is not expressly addressed by Article 4A),

then the common law claim can survive, and may be brought either alone or in conjunction with

UCC claims. See id.

Here, the Bank argues that each of Plaintiff's common law claims—aiding and

abetting fraud and conversion, as well as negligence—is displaced by Article 4A because the set

of facts giving rise to these claims is expressly covered by Article 4A. The Bank contends that

the crux of all of Plaintiff's common law claims is a claim that the Bank acted unlawfully by

executing a series of wire transfers that it should have rejected as too suspicious. Because,

according to the Bank, this scenario relates solely to the "mechanics" of a wire transfer—which

are squarely covered by Article 4A—the Bank argues that Plaintiff's wire transfer claims are

displaced. The Bank relies primarily on a decision of the California Supreme Court, which held

that a plaintiff's common law claims stemming from an allegedly unauthorized fraudulent wire

transfer were preempted by Article 4A because "the situation made the basis of the plaintiff's

common-law claims—that the Bank made an improper funds transfer—is unequivocally

addressed in the particular provisions of Article 4A" that deal with authorization of transactions

and security procedures.  Zengen, Inc. v. Comerica Bank, 41 Cal. 4th 239, 254-55 (2007).

Plaintiff contends that her common law claims are not preempted because they

relate to scenarios not clearly addressed by Article 4A—scenarios outside of the "mechanics of

how a funds transfer was conducted."  (Opp. Memo at 7.)  Plaintiff points to a number of

decisions from this District holding that wire transfer tort claims, such as claims for negligence

or conversion, are not necessarily preempted by Article 4A when they involve actions outside of

the wire transfer.  See, e.g., Banco De La Provincia De Buenos Aires v. BayBank Bos. N.A., 985

F. Supp. 364, 371 (S.D.N.Y. 1997) ("This Court agrees that a conversion claim is not necessarily

inconsistent with Article 4A.").

Courts have commonly held that a plaintiff's common law claims stemming

from a wire transfer are not displaced when the claims "are not about the mechanics of how a

funds transfer was conducted"—i.e., when the claims are about events that occurred either

**before** or **after** the processing of the wire transfer.  See Ma, 597 F.3d at 89.  For example, after

the plaintiffs in Pedersen v. MidFirst Bank entered into a contract to buy a parcel of real estate,

they received a fraudulent email (that appeared to be from their escrow agent) requesting that

they wire the escrow funds to an account at MidFirst Bank (the defendant).  527 F. Supp. 3d 188,

191 (N.D.N.Y. 2021).  Believing the request to be legitimate, the plaintiffs made the transfer, but

soon after discovered they had been scammed.  Id.  After the bank refused to return the funds,

the plaintiffs sued the bank on a number of tort theories, including aiding and abetting fraud,

aiding and abetting conversion, and negligence.  <u>Id.</u> at 192.  In response, the bank moved to

dismiss, arguing that all of the plaintiffs' common law claims were preempted by Article 4A of

the UCC.  <u>Id.</u>  In evaluating whether the plaintiffs' common law claims were displaced by the

UCC, the <u>Pedersen</u> court divided those claims into two groups.  The court ruled that the claims

that were "based on [the bank's] processing of the wire transfer"  were "preempted by the UCC

and thus dismissed" because they "concern[ed] the mechanics of an electronic fund transfer" and

thus "[fell] squarely within Article 4A."  <u>Id.</u> at 193 (citations omitted).  The court ruled,

however, that the claims "based on [the bank's] actions before and after the processing of the

wire transfer" were "not preempted" because they concerned activities not specifically addressed

by Article 4A.  <u>Id</u>.

Applying this rule to the allegations before it, the <u>Pederson</u> court noted that the

plaintiffs' common law claims were based on several instances of "conduct purportedly taken

[by the bank] before and after the wire transfers," including, for example: (1) the bank's failure

to properly monitor the scammer's account for indicia of fraud; and (2) the bank's refusal to

conduct a proper investigation after learning of the fraud.  <u>Id.</u>  Accordingly, "[a]ccepting these

allegations as true, and construing them in the light most favorable to [plaintiffs]," the court held

that none of the common law claims was preempted by Article 4A.  <u>Id.</u> at 193-94.

Plaintiff argues that her general assertions that the bank failed to follow its own

reasonable security procedures, and her allegations regarding particular aspects of the transfers

and HSBC Hong Kong's eventual flagging of the fourth claim as suspicious, support the

existence of claims based on circumstances outside the scope of Article 4A displacement, such

as: (1) the Bank's alleged failure to "properly administer commercially reasonable security

procedures;" and (2) the Bank's failure to "detect and investigate suspicious activity on the

scammers' accounts based on several anomalous characteristics of the Transfers, before and after the Transfers took place." (Opp. Memo at 9.) Drawing all inferences in Plaintiff's favor, the Court denies Defendants' motion insofar as it seeks dismissal, under a UCC displacement theory, of Plaintiff's common-law claims based on circumstances outside of the mechanics of the wire transfers.

Aiding and Abetting Conversion, Aiding and Abetting Fraud

The Court thus turns to the sufficiency of Plaintiff's allegations to support her common law claims, beginning with her two aiding and abetting claims—aiding and abetting conversion, and aiding and abetting fraud. In both of these claims, the crux of Plaintiff's allegations is that the Bank aided in the scammers' wrongdoing by serving as the intermediary bank which processed the suspicious wire transfers. Under New York law, tortious aiding and abetting requires proof of: (1) "the existence of a primary violation"; (2) "actual knowledge" on the part of the abettor; and (3) "substantial assistance" in the violation. Kirschner v. Bennett, 648 F. Supp. 2d 525, 533 (S.D.N.Y. 2009). Here, the Bank does not dispute that the scammers engaged in the primary violations of conversion or fraud, but contends, accurately, that Plaintiff has failed to plausibly allege either actual knowledge or substantial assistance on the part of the Bank.

In order to plausibly allege actual knowledge, a plaintiff must allege facts indicating that the alleged aider and abettor had direct and clear knowledge of the wrongdoing— "mere notice or unreasonable awareness" is not enough. Samuel M. Feinberg Testamentary Tr. v. Carter, 652 F. Supp. 1066, 1082 (S.D.N.Y. 1987). Although such knowledge may be averred generally at the motion to dismiss stage, Fed. R. Civ. P. 9(b), it must be supported by

"allegations of specific facts that give rise to a strong inference of actual knowledge" of the underlying tort.  Rosner v. Bank of China, No. 06-CV-13562, 2008 WL 5416380, at *5 (S.D.N.Y. Dec. 18, 2008) (citation omitted), aff'd, 349 F. App'x 637 (2d Cir. 2009).

Thus, here Plaintiff must allege facts sufficient to support a strong inference that the Bank had actual knowledge that the transfers were part of a fraudulent scheme to convert her funds.  The Bank argues that Plaintiff has not alleged (and could not allege) such actual knowledge because—even accepting the allegations in the Amended Complaint as true—HSBC USA merely served as the intermediary for what appeared to be a standard wire transfer, and there are no facts alleged indicating that it knew of the scam.  Plaintiff, on the other hand, argues that the Bank "may have known" that the transfers were fraudulently obtained, given the number of "red flags" raised by the transfers—such as the large amount of funds involved; the fact that each transfer was sent to a different recipient at a different account; and the fact that each of the accounts was immediately emptied following the deposits into the accounts held at its Hong Kong affiliate.  (Opp. Memo at 8-9; see Complaint ¶ ¶ 22-38.)

The Court concludes that Plaintiff has failed to allege plausibly that the Bank had actual knowledge that the wire transfers were fraudulently obtained.  The possibility that the Bank might have inferred the existence of fraudulent activity is insufficient to support the knowledge element of the claim of aiding and abetting fraud.  "It is well settled in the Second Circuit that a bank's negligent failure to identify warning signs of fraudulent activity, such as atypical transactions—even where such signs converge to form a veritable 'forest of red flags'— is insufficient to impute actual knowledge of ongoing fraud."  Heinert v. Bank of Am., N.A., 410 F. Supp. 3d 544, 549-50 (W.D.N.Y. 2019) (citation omitted), aff'd, 835 F. App'x 627 (2d Cir. 2020).  See also Chemtex, LLC v. St. Anthony Enters., Inc., 490 F. Supp. 2d 536, 547 (S.D.N.Y.

2007) ("[W]hen a defendant is under no independent duty, even alleged ignorance of obvious

warning signs of fraud will not suffice to adequately allege 'actual knowledge.'") (citation

omitted); Pedersen, 527 F. Supp. 3d at 194-95 (dismissing the plaintiffs' aiding and abetting

claims because they "fail[ed] to assert sufficient factual allegations from which the court can

plausibly infer that [the bank] had actual knowledge of [the scammer's] wire fraud scam prior to

or at the time of the wire transfer").

   Thus, because Plaintiff here pleads no facts to show that the Bank was actually

aware of the wire fraud scheme prior to or at the time of the transfers, she cannot plausibly allege

that the Bank had actual knowledge—regardless of how many "reg flags" or suspicious

circumstances accompanied the transfers.

   Plaintiff's aiding and abetting claims fail for the further reason that the Amended

Complaint fails plausibly to allege facts sufficient to support another critical element of her

aiding and abetting claim—that the abettor provided "substantial assistance" in the commission

of the tort.  This element is satisfied when an abettor "affirmatively assists, helps conceal, or by

virtue of failing to act when required to do so, enables the fraud to proceed," and when "the

actions of the aider/abettor proximately caused the harm on which the primary liability is

predicated." Cromer Fin. Ltd. v. Berger, 137 F. Supp. 2d 452, 470 (S.D.N.Y. 2001) (citations

omitted).

   Plaintiff argues that the Bank substantially assisted in the scammers' fraud and

conversion by acting as the "crucial link in the wire-transfer chain," and by failing to "administer

a commercially reasonable security procedure" when processing the transfers.  (Opp. Memo at

12-13.)  Plaintiff asserts that substantial assistance is "a relative term," and points to case law

holding that "ordinary business transactions a bank performs for a customer" can qualify as

substantial assistance "if the bank actually knew those transactions were assisting the customer in committing a specific tort," citing In re First All. Mortg. Co., 471 F.3d 977, 995 (9th Cir. 2006).  This argument is unavailing, for two reasons.  First, in First All. Mortg, the Ninth Circuit was applying California law, which utilized a "definition of 'substantial assistance' [that] is not entirely clear."  Id. at 994.  In contrast, the law in New York is clear that a bank's performance of routine banking transactions does not constitute substantial assistance in another's tort.  "The caselaw is clear that . . . approving transfers, even where there is a suspicion of fraudulent activity, does not amount to substantial assistance."  In re Agape Litig., 681 F. Supp. 2d 352, 365 (E.D.N.Y. 2010).  See also Heinert, 410 F. Supp. 3d at 552 (a bank's performance of "routine matters" such as "making wire transfers"—even "where they are performed with atypical frequency"—is insufficient to show that the bank substantially assisted in a fraudulent scheme); Weshnak v. Bank of Am., N.A., 451 F. App'x 61, 62 (2d Cir. 2012) ("A bank's provision of its usual banking services to a customer, does not in and of itself rise to the level of substantial assistance.") (citation and quotation omitted).  Accordingly, Plaintiff has not plausibly pled that the Bank provided substantial assistance to the scammers simply by processing routine wire transfers, even if the transfers were suspicious.  Second, In re First All. Mortg. Co.'s holding is premised on **knowledge** by a bank that the routine transactions were in furtherance of a tort.  As explained above, Plaintiff has failed to allege such knowledge plausibly here.

Because the facts alleged in Plaintiff's Amended Complaint are inadequate as a matter of law to meet two of the required elements of a tortious aiding and abetting claim—actual knowledge and substantial assistance—Plaintiff's two aiding and abetting claims are dismissed.

Negligence

Plaintiff's next common law claim against the Bank is for negligence. "To establish a prima facie case of negligence under New York law, a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom." Lerner, 459 F.3d at 286.  Although each of these elements must be established, the crucial "threshold question" is whether the defendant owed the plaintiff "a legally recognized duty of care." Agape, 681 F. Supp. 2d at 359.  Plaintiff alleges that the Bank owed her a duty to monitor "the accounts into which Plaintiff's money was going" to watch for indicia of fraud.  (Am. Compl. at 7.)  The Bank counters that banks owe no duty of care to non-customers such as Plaintiff.

The Second Circuit has recognized that, as a general matter, "banks do not owe non-customers a duty to protect them from the intentional torts of their customers." Lerner, 459 F.3d at 286 (citation omitted).  Indeed, with "billions of banking transactions occurring in New York alone, this would be the equivalent of making New York banks liable to the world's banking public." Id. (quotation omitted).  Here, none of Plaintiff's allegations suggest that either Plaintiff or the scammers were customers of HSBC USA—instead, Plaintiff's factual allegations merely suggest that the Bank served as an intermediary that processed the wire transfers from Plaintiff's various New York bank accounts into the HSBC Hong Kong accounts and relayed a message responding to an after-the-fact request by Plaintiff that HSBC Hong Kong reverse the transactions.  Plaintiff makes no attempt to identify a source of duty to her on the part of HSBC USA.  Plaintiff's negligence claim accordingly fails as a matter of law, and Defendant's motion is granted as to this claim.

UCC Article 4A Violation

The final claim raised in Plaintiff's Amended Complaint is a claim for "violation of UCC Article 4A." (Am. Compl. at 7.)  However, neither Plaintiff's Amended Complaint nor her Opposition Memo specifies which provision(s) of Article 4A, which comprises multiple parts and sections, she claims that the Bank violated.

In its Reply Memo, the Bank notes that Plaintiff does not specify which section of Article 4A is at issue, and the Bank asserts that Plaintiff is "presumably referring to Sections 4A-202 and 4A-203," arguing that Plaintiff's security procedure-related UCC claims must fail because Plaintiff authorized the transfers, and the security procedure provisions of Article 4A come into play only where a transfer was unauthorized.  (Reply Memo at 5.) While the Court perceives no viable claim under the provisions identified by Defendant, in an abundance of caution the Court will afford Plaintiff an opportunity to specify the basis of her Article 4A claim. As the Supreme Court has explained, although "[f]ederal pleading rules call for 'a short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. Proc. 8(a)(2); they do not countenance dismissal of a complaint for an imperfect statement of the legal theory supporting the claim asserted." Johnson v. City of Shelby, Miss., 574 U.S. 10, 11 (2014).  This Court thus concludes that Plaintiff's failure to cite a specific portion of UCC Article 4A in her complaint is not grounds for dismissal with prejudice at this juncture.  See Red Fort Cap., Inc v. Guardhouse Prods. LLC, 397 F. Supp. 3d 456, 472 (S.D.N.Y. 2019) (declining to dismiss the plaintiff's UCC claim even though the complaint "fail[ed] to specify a section of the UCC").

The Court accordingly grants Plaintiff permission to move for permission to file a further amended complaint specifying the provision(s) of UCC Article 4A upon which she seeks to rely.

<u>CONCLUSION</u>

For the foregoing reasons, the Bank's motion to dismiss the Amended Complaint

is granted.  Counts I, II, and III of the Amended Complaint are dismissed with prejudice as

against HSBC USA for failure to state claims upon which relief may be granted.  Count IV of the

Amended Complaint is dismissed as against HSBC USA as well, without prejudice to Plaintiff's

filing of a motion to replead Count IV in a second amended complaint, **which motion must be**

**filed within 30 days from date of this Memorandum Opinion and Order**.  The proposed

second amended complaint must be attached to the motion, and must: (1) specify the UCC

provision(s) on which Plaintiff relies; (2) plead plausibly facts supporting the UCC Article 4A

cause of action; and (3) include further details augmenting Plaintiff's jurisdictional allegations

relating to her domicile and citizenship for purposes of diversity jurisdiction.  Should Plaintiff

fail to file a motion for leave to amend within 30 days of the issuance of this Memorandum

Opinion and Order, or should such motion be denied as futile, Count IV of the Amended

Complaint will be dismissed with prejudice.

This Memorandum Opinion and Order resolves docket entry no. 18.  This action

remains referred to Magistrate Judge Netburn for general pretrial management.

SO ORDERED.

Dated: New York, New York
        September 9, 2022

 /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge